<div style="float:left">Ensworth<br>v.<br>Davenport.</div>

that statute, I cannot doubt.   Any other construction would narrow the effect of a statute, which was intended to extend a beneficial remedy to cases not thus provided for, when the language does not necessarily require it.

I would, therefore, advise the superior court, that judgment be rendered for the plaintiff.

The other Judges were of the same opinion, except PETERS, J., who was not present when the case was decided.

Judgment for plaintiff.

---

## MARCY *against* KINNEY and others.

The naked fact, that more land, and much more, as estimated, was levied upon and appraised, than was set off on the execution, without a re-appraisement of the specific land set off, is not sufficient to render the levy invalid.

Therefore, where the officer levied the execution on a tract of land, particularly described, containing, by estimation, 120 acres ; the appraisers appraised said land at 7 dollars, 87 cents, *per* acre ; and the officer thereupon set off to the creditor 47 acres and 90 rods thereof, particularly described ; it was held, that these proceedings, unaccompanied with any proof of unfairness or inequality, were not illegal.

Where *B*. and *C*., defendants in ejectment, claimed title under an absolute deed from *A*., their father and a co-defendant ; the plaintiff, claiming that such deed was fraudulent and void, introduced evidence conducing to prove, that *A*. had become insolvent when he executed it, that no money was paid or security given as the consideration, and that the grantor declared, that he gave it to his sons for a certain note which they had executed with him, as his sureties, to *D*. ; and then the plaintiff offered evidence to shew, that *D*. had, subsequently to the execution of the deed, obtained satisfaction of this note, by the levy of an execution on *A's* land, and thus *B*. and *C*., the sureties, were discharged ; after a verdict for the plaintiff, it was held, that the latter evidence, if not admissible, in connexion with the former, to prove fraud, tended to shew, that the defendants *B*. and *C*. had suffered nothing and could suffer nothing, by their suretyship ; and as they had had all the advantage from the deed that they could be entitled to, a new trial ought not to be granted, on account of the admission of such evidence.

THIS was an action of ejectment, brought by *Calvin Marcy* against *Eleazer Kinney* and his two sons, *Paul* and *Elijah Kinney.*

The cause was tried, on the general issue, at *Tolland*, October term, 1831, before *Hosmer*, Ch. J.

The plaintiff claimed title by the levy of an execution in his favour against *Eleazer Kinney*, one of the defendants; and offered in evidence the judgment and execution, with the officer's return thereon. The defendants objected to the admission of this evidence, on the ground that the levy was void on its face.

It appeared, that the appraisers appraised the whole farm, of which the land set off was a part only, at 7 dollars, 87 cents, *per* acre, and did not appraise the land set off separately, but applied the general appraisal of the whole to the specific part set off.

The officer's return was as follows : " By direction of the creditor herein, I levied this execution on a certain piece of land, whereof the said debtor was seised and possessed in fee, lying about half a mile *North* of *Union* meeting-house, containing, by estimation, 120 acres, bounded, &c.; and thereupon, I applied to *Calvin Marcy*, the within named creditor, who appointed *William Eaton ;* and I also applied to *Eleazer Kinney*, the within named debtor, who appointed *Paine Cleaveland ;* and the said creditor and debtor refused and neglected to agree on the third person, whereupon I aplied to *Augustus Moore*, Esq., justice of the peace for *Tolland* county, residing in said town of *Union*, and by law qualified to judge between the parties, who designated and appointed *Nathaniel Newell*,—all indifferent freeholders of said town of *Union*,—to appraise and value said land ; and the said *Augustus Moore*, justice of the peace, on the 9th of *March* 1831, administered to the said *William Eaton, Paine Cleaveland*, and *Nathaniel Newell* the oath by law in such case provided ; and said appraisers, after viewing said land, did then and there appraise and estimate said land at the sum of 7 dollars and 87 cents *per* acre, as its true and just value, of which valuation they made a certificate under their hands in writing, and delivered the same to me ; and thereupon, on the 10th day of *March* 1831, I set off to the said *Calvin Marcy* 47 acres and 90 rods thereof, bounded and described as follows, &c. in full satisfaction of this execution and of my fees and charges thereon : and on the 18th day of *March* 1831, I caused this execution to be recorded in the records of lands of the town of *Union*, within which said land lies."

*Tolland,*
*August, 1832.*

Marcy
*v.*
Kinney.

Justice *Moore,* in his certificate, appended to the return, stated, that he appointed *Newell* an appraiser with the other appraisers, " to appraise and estimate the land above descri-bed," and administered to them the oath by law provided.

The certificate of the the appraisers, also appended to the return, was as follows :  " The subscribers, freeholders of the town of *Union,* having been appointed and sworn as above specified, to appraise the above described piece of land, to be set off on said execution, did appraise the same at the sum of 7 dollars and 87 cents, per acre, as the true and just value thereof." This certificate was dated *March* 9th, 1831.

The court admitted the evidence objected to, on the ground, that construing the whole of the return with the appended certificates, it sufficiently appeared, that the land set off was by itself distinctly appraised.

The defendants, *Paul* and *Elijah Kinney,* claimed title to the land in question, by an absolute deed, executed by their father *Eleazer Kinney,* before the levy of the above mention-ed execution. The plaintiff claimed, that such deed was fraudulent and void ; and introduced evidence conducing to prove, that the grantor had become insolvent, when he execu-ted it ; that no money was paid or security given as the con-sideration thereof ; and that the grantor declared, that he gave it to his sons for a certain note, which they had executed with him, as his sureties, to *Michael Richmond.* To shew, that the grantor was not indebted to his sons, the plaintiff of-fered in evidence, an execution, issued on a judgment obtained on the same note, with the levy thereof on part of the land de-scribed in the deed, posterior to the execution of the deed. To the admission of this evidence the defendants objected, on the ground that it did not conduce to prove the deed fraudulent. The court admitted such evidence, for the purpose for which it was offered.

The plaintiff obtained a verdict ; and the defendants mov-ed for a new trial.

*Stearns* and *Strong,* in support of the motion, contended, 1. That the levy of the plaintiff's execution was not according to law. In the first place, the specific piece of land set off must be appraised by itself, and not in connexion with other land, which may be more or less valuable. Secondly, it ap-

OF THE STATE OF CONNECTICUT.

pears from the officer's return, that the land appraised at 7 dollars, 87 cents, *per* acre, was the land levied on ; and this was a farm of 120 acres. Thirdly, the certificate of the appraisers refers to the land *levied on,* and not the land set off ; for the appraisal was made and the certificate dated *before* the setting off. Fourthly, the certificate of the appraisers is not a part of the officer's return ; not having been adopted by him, either by incorporating it in his return, or by referring to it, as a part of the proceedings.

2. That the evidence offered by the plaintiff relative to the satisfaction of the *Richmond* debt, did not affect the validity of the deed given by *Eleazer Kinney* to his sons. It did not conduce to shew fraud in the concoction ; without which, the title of the grantees must prevail at law. It would tend to prejudice the minds of the jury, where it could have no legitimate effect.

*Goddard* and *Fitch,* contra, contended, 1. That the levy was valid. The statute requires a levy, an appraisment and a setting off ; but it does not prescribe the precise manner in which these steps are to be taken ; and the order of them is determinable only *ex natura rei.* The officer must first levy on the land, or sequestrate it as the subject of proceedings under the execution ; but he cannot know how much will be wanted ; for this depends upon its value. The appraisers then ascertain its value ; which is the whole of their duty. This, with the amount of the debt already in the officer's possession, furnishes him with the requisite *data ;* and he proceeds to set off enough to satisfy the execution. In doing this, it will be presumed that he acts fairly, until the contrary is shewn. The proper corrective of possible fraud or oppression, is an investigation of the facts by a jury ; which may always be had. *Benjamin* & al. v. *Hathaway,* 3 *Conn. Rep.* 529. 534. *Bill* v. *Pratt,* 5 *Conn. Rep.* 123. It appears, then, in the first place, from the body of the officer's return, that the levy was valid.

But secondly, taking the certificate of the appraisers annexed to the return, as a part of the return, according to the doctrine of *Booth* v *Booth,* 7 *Conn. Rep.* 350. 366. it appears, that the judgment of the appraisers was expended upon the precise parcel of land set off. What they appraised was,

*Tolland,*
August, 1832.

Marcy
v.
Kinney.

"The above described piece of land, [*i. e.* the land last described in the return,] to be set off on said execution." This removes the very foundation of the objection.

2.   That the evidence of fraud offered by the plaintiff, was properly admitted.   It went to shew, that there was not, in fact, any consideration ; and that the pretended consideration utterly failed.

But whether the evidence in question was strictly admissible or not, a new trial will not be granted ; for the grantees of the deed have paid nothing, and *now* are liable to pay nothing.

WILLIAMS, J.   Had the defendants, *Paul* and *Elijah Kinney,* taken a mortgage to secure themselves against their liability, as they should have done, the payment of the debt, by this levy upon the land, would have discharged their claim : and they ought not to be in a better situation, by taking an absolute deed, than if it had been conditional.   The very fact, that the deed was absolute, when it was uncertain whether they would ever pay the debt for which it was given, was strong evidence, that the deed was fraudulent.   It was an absolute deed, from a father to his sons, on the eve of an avowed insolvency, without any security from them, that they would pay the debt ; and the debt was finally paid, by part of this very land.   The evidence admitted, certainly, tended to shew, that as the defendants, *Paul* and *Elijah,* had suffered nothing, they could suffer nothing in consequence of this suretyship ; and under the circumstances, they have had all the advantages from this deed, they could be entitled to ; and ought not, therefore, to have a new trial, on that account.

The defendants also claim, that the plaintiff has no title, his levy being void ; and they claim it is invalid, because the officer in his return, avers, that he levied upon a farm estimated at 120 acres, which was appraised at 7 dollars, 87 cents, an acre, of which he sets off 47 acres and 90 rods in satisfaction of the execution ; and that it does not appear, that this 47 acres was appraised, except as it was included in the general appraisement of the farm.

The statute makes it the duty of the officer to levy upon the lands, tenements, or real estate of the debtor ; and that the same shall be appraised according to its true value ; and the of-

ficer, thereupon, shall set out so much of the lands as may be sufficient, at the appraisement, to pay the debt and charges, if sufficient ; if not, so much as there may be.   The officer has here pursued the very words of the statute ; but it is claimed, that he has not pursued it according to its intent ; that he has levied upon much more land, than was necessary to satisfy the execution ; much more than he set off.

It must be observed, that we have no facts to shew what was the quantity of land in the farm.    We know that it was *estimated* at 120 acres ; but when we are called upon to declare a levy void, because too much was levied upon to present to the appraisers, we ought to have something more than an estimate of the quantity, although that estimate was made by the officer himself.    Here is an utter uncertainty, what number of acres the farm contained.    But it does appear, from the whole return, that there was more levied upon than was set off to satisfy the execution ; as the return shews, that 47 acres and 90 rods *thereof*, were set off to satisfy said execution.

The question then occurs, is the naked fact, that more, much more, as estimated, was levied upon and appraised, than was set off, sufficient to render the levy invalid, unless it appears that there was a re-appraisement of the particular land set off.

I am not prepared for that result.    If it is said, that more may render the levy void, I ask, how much more ?    Will one acre, or ten, or twenty ? Can any certain rule be established, by which we are to measure the quantity of land that the officer must levy upon and have appraised ? It could not be expected he could take the exact quantity, any more than he could take the exact quantity of goods ; unless he could be supposed to know the appraisers' opinion beforehand. What then was his duty ? He is, in this case, as in case of a levy upon personal property, to conduct fairly, with a due regard to the rights of the debtor, and the convenience of the creditor ; keeping in mind, that the motives which influenced him, and the tendency of his conduct, may all be investigated, by a jury of his country.

This was the principle adopted in *Benjamin* & al. v. *Hathaway*, 3 *Conn. Rep.* 528. 533. and is the only practicable restriction upon certain discretionary powers, which must sometimes necessarily be vested in an executive officer.

It is asked, is it to be presumed, that each acre of a farm

containing 120 acres, is of equal value ; and it is said, unless it be so, this cannot be a fair transaction.    When an appraisal of a quantity of land is made with a view of setting off a part, unless the several acres are nearly of equal value, this may not be a fair mode of appraisal.    But when the quantity is unknown, except by estimation, and the farm is appraised at a certain sum by the acre, in the absence of all proof to the contrary, it may fairly be presumed, that the average value per acre of the whole, is also the average value of one half, or even of one third.

If there is disparity in the value, this may be shewn, for the purpose of shewing the object of the officer or creditor ; and if it could be shown, that gross injustice was done to the debtor, or that the object was, by the forms of proceedings, to gain an undue advantage, such an experiment would never be sanctioned by intelligent men.    But it would be too much, to say, that the levy was void, from the mere fact, that the quantity levied upon, and appraised by the acre, was greater than that set off.

The proper way, doubtless, is, for the officer to levy upon what he supposes enough to satisfy the execution—the whole tract, or less ; to get the opinion of the appraisers ; then, if it is more than he needs, levy on so much, as, in the opinion of the appraisers, will satisfy the execution ; make his return according to the last levy, and let their certificate correspond with that return.    From the whole of this return, I think, that was done here ; but as that is somewhat doubtful, I have formed my opinion upon the case, as claimed by the defendants ; and I think, that admitting the return to be what the defendants claim it to be, an appraisement of the whole farm, that simple fact, unaccompanied with any proof of inequality or unfairness, is not sufficient to render the levy void ; and therefore, I would advise that there be no new trial.

The other Judges were of the same opinion, except Bissell, J., who was absent.

New trial not to be granted.