## John M. Locke et al. v. George W. Duncan.

1. ATTACHMENT—*Creditors to Share Pro Rata, When.*—Under Section 37 of the Attachment Act the plaintiffs in different suits are entitled to share *pro rata* out of the proceeds of the property attached.

2. SAME—*What Rights a Creditor Can Acquire.*—An attaching creditor can acquire no higher or better rights to the property than the defendant had when the attachment took place unless he can show some fraud or collusion by which his rights are impaired.

3. SAME—*Who May Maintain Trespass for the Goods.*—A person who is not a defendant in an attachment suit may maintain trespass for goods taken, against the sheriff executing the attachment, after judgment, execution levied and the goods sold, and may show his ownership. Such an owner is not in any way concluded by the attachment proceedings. If he is not a party to them he is not bound by them.

4. SAME—*What Creditors Are Not Entitled to Share Pro Rata.*—One of several creditors procured the levy of an attachment upon the goods of an absconding debtor, as well as personal service upon him, and at the return term of the court obtained judgment, upon which a special execution was awarded and the property sold as the property of the defendant in attachment for $489.72. Afterward, a third party claiming the prop-

erty as his own, sued the plaintiff in attachment, the other creditors, and the sheriff who sold it, in trespass, for its value, and recovered a judgment, which was paid. *It was held*, that, under the circumstances, the plaintiff in the attachment suit was entitled to the whole of the proceeds of the sale notwithstanding the statute allowing a *pro rata* distribution among the other attaching creditors.

5. SUBROGATION—*When the Right Exists.*—A creditor procured an attachment against an absconding debtor and subsequently caused property seized as that of the defendant in attachment to be sold. After the sale he was sued in trespass for the value of the property by a third person who recovered a judgment for such value. *It was held*, that upon payment of such judgment he was entitled to be subrogated to the rights of such third party.

**Memorandum.**—Attachment proceedings. Appeal from the Circuit Court of Lee County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the December term, 1893. Reversed and remanded. Opinion filed May 22, 1894.

The opinion states the case.

APPELLANTS' BRIEF, WILLIAM D. BARGE, ATTORNEY.

" The levy of an attachment can confer no greater rights upon the creditor than the levy of an execution, and it is well settled that the purchaser at an execution sale of a partner's interest, to satisfy a judgment against the individual member of the firm, only acquires such interest as the debtor has after paying his debts to the firm, and the firm's debts to its creditors." 1 Wade on Attachment, Sec. 223.

It is a well settled principle, that an attaching creditor can acquire through his attachment, no higher or better rights to the property or assets attached, than the defendant had when the attachment took place. Drake on Attachment, Sec. 223; Samuel v. Agnew, 80 Ill. 553.

Another established principle affects with peculiar fitness attachments of real estate, that the attachment can operate only upon the right of the defendant existing when it is made. Drake on Attachment, Sec. 223; Crocker v. Pierce, 31 Maine, 177; Drake on Attachment, Sec. 245.

The levy takes effect only upon such interest as the debtor has in the property at the time of the levy; it does not *per se* affect the title at all. 1 Am. & Eng. Encyclopædia, 730.

APPELLEE'S BRIEF, DIXON & BETHEA AND A. K. TRUSDELL, ATTORNEYS.

All creditors of George W. Duncan are entitled to share *pro rata* under section 37 of Attachment Act. 1 Starr & Curt. Stat., p. 325.

Appellants are not entitled to all the proceeds of sale, because the creditors were not *joint tort feasors;* and if they were, there could be no contribution among them. Cooley on Torts, p. 149.

The doctrine of subrogation does not apply. That is an equitable doctrine inapplicable to suits at law, and limited to insurers, sureties, guarantors and junior incumbrancers. Myer v. Mintonye, 106 Ill. 414; Bishop v. O'Connor, 69 Ill. 431.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was an attachment suit, brought to the September term, 1891, of the Circuit Court of Lee County. The writ, after personal service, was levied on a stock of goods as the property of Geo. W. Duncan and in the attachment suit of the appellants. Afterward two other suits were brought to that same term against said Geo. W. Duncan, one in attachment in favor of Keickhefer et al., and the other in assumpsit by Romadka et al. At the return term judgment by default was rendered against the defendant in each suit; in appellants' suit for $429.08 and costs, in the Romadka suit for $128.91, and in the Keickhefer suit for $275.83. Special executions were awarded plaintiffs in the two former suits against the property attached.

There was no personal service upon Geo. W. Duncan in the Romadka or Keickhefer suits, the writs being returned " no property found." In the latter suit, the property previously taken in appellants' attachment being then in the place to which it had been removed by the sheriff after taking it in the appellants' suit, the sheriff had no possession of the property, other than or different from that which he had before making the levy, and there was no pers~ al service in the last suit, the defendant having depar' ∠ the State. At

the September term, 1891, the defendants in the different
suits entered his appearance by attorney and not pleading,
default was taken against him at that term and judgment
rendered for the amounts specified.   Executions were issued
on the said judgments as follows:   In the Romadka suit,
general execution October 7, 1891; in the appellant's suit,
general and special execution, November 20, 1891; and
general and special execution in the Keickhefer suit Decem-
ber 28, 1891.

The sheriff sold the property levied upon under the ap-
pellants' execution for $489.72.   The costs in that suit
amounted to $103.92, and in the Romadka suit to $4.95, and
in the Keickhefer suit to $8.05.   The sheriff paid appellants
on their execution $206.97, and refused to pay the balance,
the other judgment creditors claiming their *pro rata* share.
After the sale, to wit, July, 1891, William C. Duncan, claim-
ing to be the owner of the property levied on and attached
by the sheriff, as above stated, commenced a suit in an ac-
tion of trespass against the appellants and the sheriff mak-
ing the levy, to recover damages by reason of the taking of
the said property.   The defendants in that suit pleaded that
the property in question was that of Geo. W. Duncan, and
not of Wm. C. Duncan, and that the sheriff had taken the
same in the said appellants' writ of attachment as the prop-
erty of Geo. W. Duncan.   Upon that issue a trial was had
in the Circuit Court, resulting in a verdict in favor of
plaintiff against defendants for $1,125, and the plaintiff,
having filed a remittitur, judgment was rendered against
defendants for $793, from which judgment they appealed to
this court, which was afterward affirmed, and the appellants
paid it with the costs, with interest in full, on the judgment.
The court then overruled the appellants' motion, made in the
attachment suit, to have all the money realized by the sale
of the goods herein in the attachment suit, paid over to
him, less costs.   The court then found that the money real-
ized after the payment of costs by the sale of the goods in
appellants' attachment suit amounted to the sum of $410.65,
and found that appellants had received $208.60, and then

ordered the balance of the money to be paid to the other judgment creditors *pro rata*, to wit: On the Keickhefer judgment $137.56, and on the Romadka judgment $64.47, and the balance on appellants' judgment, $1.63, to which action of 'the court appellants excepted.

The case is appealed to this court and the entering of the said order of distribution is assigned for error, in the particular for allowing any part of the money to be paid on the judgment other than plaintiffs' and in not ordering all to be paid to them. There can be no question but that under Sec. 37 of the Attachment Act, R. S., the plaintiffs in the different suits herein would be entitled to share *pro rata* out of the proceeds of the property attached herein. But the question arises for our serious consideration, whether in reality, and in law and equity, there were any proceeds arising from the sale of any property of Geo. W. Duncan, the attached debtor. It was no doubt thought at the time the different suits were commenced, and to the time of the recovery of Wm. C. Duncan against the appellants for the property attached, that the property was that of Geo. W. Duncan. After that time it was shown and established that Geo. W. Duncan was not the owner of and had no interest in the property attached as his. The law "is well settled in this State that an attaching creditor can acquire no higher or better rights to the property than the defendant had when the attachment took place, unless he can show some fraud or collusion by which his rights are impaired." See Drake on Attachments, Sec. 220.

In Samuel v. Francis Agnew, 80 Ill. 553, it is held that one who is not a defendant in an attachment suit may maintain replevin for the goods against the sheriff, holding the attachment against another party after the execution had been issued and levied on the goods, and may show his ownership. Such owner is not in any way concluded by the attachment proceedings; he is not a party to them and is not bound by them. Suppose, in this case, after judgment rendered and executions had been issued, Wm. C. Duncan had recovered the attached goods in an action of replevin against the sher-

iff; could it be rightfully contended that the sheriff would have been responsible to the attaching creditors for the goods? It was held to the contrary in the suit of Samuel, above cited. The only difference between that case and this is that instead of replevying the goods as he might have done and recovering them, by which proceeding all the attaching creditors would have been bound, he chose to allow the goods to be sold under the executions and to proceed to recover the value of them in an action of trespass against the sheriff making the levy and selling the goods, and the appellants, on whose attachment and execution they were levied on and sold. By the recovery of Wm. C. Duncan, it was as completely settled that Geo. W. Duncan never had any interest in the goods in question, as it would have been if they had been recovered in an action of replevin. The title of Geo. W. Duncan and the rightfulness of the attachment was directly in issue, and the parties plaintiffs, who were seeking to profit by virtue of the statute by and through the attachment proceeding of the appellants, were bound by the recovery in the trespass suit. They should be regarded as privies to it. Since, then, it is settled that Geo. W. Duncan, the attached debtor, had no interest in the property attached and sold, there could be no equity and good conscience in allowing the judgment creditors, other than the appellants, to share in the proceeds of the sale of the property as against the appellants, who paid largely more for the property by virtue of the recovery in the trespass suit than it brought at the sale under the attachment execution. The amount of the recovery in the trespass suit and the payment of the judgment therein by the appellants should be regarded as in the nature of a purchase of the goods by the latter from the rightful owner by compulsion of law, in which goods the judgment creditors of Geo. C. Duncan had not nor could have the slightest interest.

The appellants having sold their goods under their attachment execution, under the supposition they were the goods of Geo. W. Duncan, ought, in equity, to be subrogated to the rights of Wm. C. Duncan, the true owner, whom the

appellants afterward were compelled to pay for the goods. The doctrine of subrogation rests upon and has its foundation in equity. The judgment creditors other than the appellants have lost nothing, as their judgment debtor had nothing they could reach. Any course of reasoning, however specious, that would give a *pro rata* share of the money in the hands of the sheriff, arising from the sale, would be fallacious and work great injustice. Notwithstanding the statute in question above quoted, allowing *pro rata* distributions, the Circuit Court, in cases like this, has equitable power to do justice between all parties. The court below erred in not allowing appellants the entire amount of the proceeds in the hands of the sheriff arising from the attachment sale. For the above reasons the order of the Circuit Court is reversed and the cause remanded.